IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GLORIA WEICHAND and<br>RALPH WEICHAND, her husband,<br>Plaintiffs | : <br>: <br>: <br>: | No. 3:06cv435<br><br>(Judge Munley) |
| v. | : | |
| THE GUARDIAN LIFE<br>INSURANCE COMPANY OF<br>AMERICA and BERKSHIRE<br>LIFE INSURANCE COMPANY<br>OF AMERICA,<br>Defendants | : <br>: <br>: <br>: <br>: <br>: | |

## MEMORANDUM

Plaintiffs Gloria and Ralph Weichand have filed suit regarding benefits that they allege are due under Plaintiff Gloria Weichand's long term disability insurance. The complaint raises solely Pennsylvania state law causes of action. Before the court for disposition is the defendants' motion to dismiss the plaintiffs' compliant for failure to state a claim due to federal preemption under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). The matter has been fully briefed and is ripe for disposition.

**Background**

Plaintiff Gloria Weichand (hereinafter "plaintiff")[1] was employed by Somerset Pharmaceutical Corporation as a full-time administrative assistant when on January 21, 1991, she became totally disabled from her occupation due to severe depression, anxiety, colitis, hypertension and

---

[1]Although there are two plaintiffs, Gloria and Ralph Weichand, the claims regard Gloria's disability insurance benefits and Ralph's claim is merely a derivative loss of consortium claim. Therefore, for simplicity we will use the term "plaintiff" throughout this opinion instead of "plaintiffs."

migraine headaches. (Complaint, Ex. A, to Notice of Removal, Doc. 1, hereinafter "Compl." ¶ ¶ 15, 18). Defendant Guardian Life Insurance Company of America[2] had issued a Professional Disability Income Insurance Policy to plaintiff on August 2, 1990.[3] (Compl. ¶ 10). In exchange for the premium payments, which were originally paid for by plaintiff's employer, the insurance policy provided disability income coverage in the amount of $2,040.00 per month. (Compl. ¶ 11).

Plaintiff submitted a statement of claim to the defendants for disability benefits on April 18, 1991. (Compl. ¶ 19). Somerset terminated plaintiff's employment in April 1991 due to her inability to perform her job functions. In May of 1991, Somerset severed all administrative and financial ties with the policy, and plaintiff became liable for premium payments. The defendants removed the discounted group premium from the policy. After review of the claim, the defendants informed plaintiff on July 26, 1991 that they would provide the benefits. (Compl. ¶ 26). Plaintiff's employer, Somerset, ceased to exist in 1992.

Defendants paid the benefits until they determined in February 2004 that Plaintiff Gloria Weichand was no longer totally disabled. (Compl. ¶ 100). Plaintiff requested reconsideration of this determination, and on September 7, 2005, after an investigation, the defendants denied the claim. (Compl. ¶ 122).

---

[2]Defendant Berkshire Life Insurance Company of America is a wholly-owned subsidiary and administrator for Guardian. (Compl. ¶ 5). Both entities were involved in handling plaintiff's disability claim, and we will refer to the them collectively as "defendants". (Compl. ¶ 6).

[3]The insurance policy at issue bears policy number G-710236. (Compl. ¶ 10).

On January 25, 2006, plaintiff instituted the instant action in the Court of Common Pleas of Luzerne County, Pennsylvania, and the defendants removed the action to this court on February 28, 2006. (Doc. 1, Notice of Removal). Plaintiff's complaint raises the following claims: Count I, breach of contract; Count II, bad faith; Count III, violation of the duty of good faith and fair dealing; Count IV, breach of fiduciary duty; Count V, negligence; Count VI, negligent infliction of emotional distress; Count VII, waiver and estoppel; Count VIII, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law; Count IX, loss of consortium (Plaintiff Ralph Weichand). Defendants move to dismiss all of these claims as preempted by ERISA bringing the case to its present posture. We notified the parties pursuant to Federal Rule of Civil Procedure 12(b) that we would treat defendant's motion as a motion for summary judgment on the issue of preemption.[4] (Doc. 22). In our notice, we provided the parties an opportunity to supplement the record with any additional material that they thought was appropriate for us to review. (Id.). The matter is now ripe for disposition.

**Standard of review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged

---

[4] The parties do not dispute the fact, but instead dispute the manner in which the law should be applied to the facts.

3

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. <u>International Raw Materials, Ltd. v. Stauffer Chemical Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. <u>Anderson</u>, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law. <u>Id.</u> Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. <u>Celotex v. Catrett</u>, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. <u>Id.</u> at 324.

**Jurisdiction**

This Court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332.  The plaintiff is a citizen of the Commonwealth of Pennsylvania.  (Compl. ¶¶ 1- 2).  Defendant Guardian is a New York state corporation with its principal place of business in New York, New York. (Notice of Removal ¶ 5).  Defendant Berkshire is a Commonwealth of Massachusetts corporation with a principal place of business in Pittsfield,

4

Massachusetts. (Notice of Removal ¶ 6). Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

Defendant also asserts we have federal question jurisdiction under 28 U.S.C. § 1331 because the plaintiff is seeking to recover disability insurance benefits under the terms of an insurance policy governed by ERISA. (Notice of Removal ¶ 15).

**Discussion**

ERISA is a federal statute whose purpose is "to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive preemption provisions, see ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004) (internal quotation marks and citation omitted). Claims challenging the amount of benefits due under an ERISA-regulated plan are completely preempted by ERISA's civil enforcement scheme found in section 502 of the statute, 29 U.S.C. § 1132. Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 272 (3d Cir. 2001).

ERISA § 514(a), the express preemption clause, broadly provides that "[e]xcept as provided in subsection (b) of this section, the provisions of this title ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).

Defendants argue that plaintiffs' state law claims should be dismissed because they are preempted by ERISA. Defendants bear the burden of establishing ERISA preemption as it is an affirmative defense. Kane v. Conn. Gen. Life Ins. Co., 867 F.2d 489, 492 n.4 (9th Cir. 1988).

Defendants' position is that plaintiffs' disability policy is an "employee benefit plan," and thus the state law claims are preempted. The plaintiff asserts that her plan does not fall under ERISA's definition of "employee benefit plan."[5]

In pertinent part, ERISA defines "employee benefit plan" as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise. . . disability . . . benefits." 29 U.S.C. § 1002(1) Thus, ERISA applies to employee benefit plans that are "established or maintained" by an employer.  29 U.S.C. § 1003(a)(1).

In order to determine if an employee benefit plan exists, courts examine the following factors derived from the definition quoted above:  (1) Is there a plan, fund or program; (2) established or maintained; (3) by an employer; (4) for the purpose of providing health care or disability benefits; and (5) to participants or their beneficiaries.  Stone v. Disability Management Services, Inc., 288 F. Supp. 2d 684, 688 (M.D. Pa. 2003).

Plaintiff asserts that her policy with the defendants is an individual contract of insurance governed by state insurance law, not an employee benefit plan. Defendants argue that plaintiffs policy is, in fact an employee benefit plan because it was "established" by her now defunct former

---

[5]ERISA deals with two types of employee benefit plans, "employee welfare benefit plans" and "employee pension plans." 29 U.S.C. §§ 1002(1) -1002(2).  At issue in this case is an employee welfare plan although, for purposes of simplicity, we use the more general term "employee benefit plan"

6

employer.  Defendants thus frame the issue in the instant case as whether the plaintiff's plan was "established" by the employer.

" '[A] plan, fund or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Deibler v. United Food & Commercial Workers' Local Union 23, 973 F.2d 206, 209 (3d Cir.1992). Whether a plan exists within the meaning of ERISA is "a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person." Id.

Defendants assert that Somerset, the employer, "established or maintained" the policy because it initially paid 100% of the premium.   In support of its position that Somerset paid the premium, defendants present an "Amendment to Application" that plaintiff signed on August 16, 1990, which forms part of the policy and indicates that her employer will pay 100% of the premiums.  (Def. Ex. 2, p. 18).  It further provides that none of the premium paid will be included in her taxable income.  (Id.). Additionally, on her notice of claim, dated April 18, 1991, plaintiff indicated that her employer paid 100% of the premiums.  (Def. Ex. 3, p. 5).

Defendants argue that it is an ERISA plan if it was "established or maintained" as one.  Defendants emphasize that the disjunctive "or" is used in the statute, and argue that as long as the plan is originally established as an ERISA plan, it is always an ERISA plan.  In the instant case, the plan was established as an employee benefit plan.  Therefore, although, the company eventually stopped providing premium payments and actually went out of business because the plan was "established" as an ERISA-covered plan, ERISA preemption applies.

7

Plaintiff does not necessarily disagree that Somerset initially established the policy as an employee benefit plan under ERISA. Plaintiff - rather than focusing on the facts as they were at the time of the policy's inception - asserts that over time the circumstances changed and even if the policy had been "established" as an ERISA plan, it has been converted into an individual non-ERISA policy. These circumstances include Somerset terminating plaintiff in April 1991, Somerset severing all administrative and financial ties with the policy as of May 1991, plaintiff becoming liable for premium payments in May 1991, the defendants removing the discounted group premium from the policy, and Somerset ceasing to exist in 1992. After a careful review, we agree with the plaintiff.

In support of its position, defendants rely upon the Eleventh Circuit Court of Appeals case See Jones v. LMR Internat'l, Inc., 457 F.3d 1174 (11th Cir. 2006). Jones, however, is distinguishable from the instant case. In Jones, the employer deducted funds from the plaintiffs' paychecks to apply to their health benefit plans. The employer failed to submit those funds to the insurer and the plans were cancelled. Id. at 1176. Accordingly, the insurance coverage was cancelled, and the employer never informed the plaintiffs. The plaintiffs then incurred the cost of medical care for which they were not covered. Id. at 1177. The issue before the court was whether ERISA law applied even though the policy had lapsed. The plaintiff argued that as the health care plan had lapsed by the time that the claim accrued, therefore, no ERISA plan was in existence and ERISA preemption did not apply. Id. at 1178.

The court began its analysis by examining the definition of an "employee welfare benefit plan." The court noted it is defined as "any plan, fund, or program which was established or maintained by an employer." 29

8

U.S.C. § 1002(1).  Id.  According to the court, "Because a covered plan is defined in the disjunctive, the plain language of the statue would seem to suggest that ERISA preemption applies to actions under ERISA plans that were originally established by an employer even if those plans are now defunct." Id.  The court held that "assuming the other requirements for complete preemption are met, state law claims relating to a lapsed ERISA plan are completely preempted by ERISA.  This conclusion is dictated by the plain language of the statute.  Although the plain language is controlling, we note that it also accords with the legislative history, which is replete with references to how the new statutory scheme will address problems associated with the termination of employee benefits plans." Id. at 1179 (internal citations omitted).

While the Jones court used language that favors the defendants' position in the instant case, the facts are so different as to make the Jones case of little persuasive weight.  For example, in Jones the employer was still in business at the time the complaint was brought, and the plaintiffs may still have been employed by the employer.  Thus, the issue was whether an ERISA plan still exists where the employer and employees still exist, but the insurance policy has lapsed.   In the instant case, the employer had gone out of business many years before the defendants denied benefits.  Plaintiff had been fired and had became responsible for her own insurance premiums.  Therefore, the issue we are presented with is whether a plan still exists where there is an insurance policy, but there are no employees and no employer.

Defendant also cites an unpublished opinion from the United States District Court for the Eastern District of Pennsylvania, where the employer who had initiated the ERISA benefit plan was bought out by a different

9

company. Tannenbaum v. Unum Life Ins. Co. of America, No. 03-CV-1410, 2006 WL 2671405 * 8 (E.D. Pa. Sept. 15, 2006). The plaintiff, seeking to avoid ERISA preemption, asserted that as he was no longer employed by the company that established the plan and as he had started paying his own premiums, the policy had been converted into a private policy.   Id. at * 8.  The court disagreed. Quoting Brown v. The Paul Revere Life Ins. Co., No. Civ. A. 01-1931, 2002 WL 1019021, * 8 (E.D. Pa. May 20, 2002), the court noted that "no court has ruled that a plaintiff who does not convert, but simply continues to pay as an individual when his employer becomes defunct, has removed his policy from ERISA coverage."  Id.   Again the facts of this case are not the same as in the instant case.   There was still, evidently an employer in this case, although the original employer was bought out by a different entity.  It also appears that the employees covered by the insurance paid their own premiums, but did so at a discounted rate.  Id. at * 5, *7.  Notably, the plaintiff was still an employee when the cause of action arose.  Id. *1.

   Thus, these cases relied upon by the defendant have several commonalities:  there were employees and employers involved when the insurance disputes arose.  In reviewing these cases, it is important to emphasize the goals of ERISA.   One of the goals of Congress in enacting ERISA was to ensure that employers would not face conflicting or inconsistent state and local regulation of employee benefit plans.  Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 86 (1983).  The other principal aim of ERISA is to protect employees' " justified expectations of receiving the benefits their employers promise them." Central Laborers' Pension Fund v. Heinz, 541 U.S. 739, 743 (2004).  Therefore, ERISA's purposes  - to benefit employees by protecting their plans and protecting employers by

10

providing uniform rules - were served in the above case. Needless to say, these goals are not served when there is no employer or employee involved in the case. In the instant case, when the dispute arose, the employer had been out of business for twelve (12) years and the plaintiff's employment had been terminated even before that. ERISA's purposes are not served by application to these facts.

This situation is more analogous to Waks v. Empire Blue Cross/Blue Shield, 263 F.3d 872 (9th Cir. 2001) cited by plaintiff in support of her position. In this case, the plaintiff Barbara Waks initially obtained insurance coverage through an ERISA-regulated group insurance plan that covered employees of her husband's company. Id. at 874. The group policy contained conversion rights that allowed an insured to convert a policy from the group policy into an individual policy if the company went out of business. Id. The company did go out of business, and Waks converted her policy into an individual policy. Id. Subsequent to the conversion into an individual policy, Waks needed medical care. The insurer denied a claim for the medical care, and this denial was the basis of the lawsuit. Id. The issue presented to the court was whether ERISA preemption extends to state-law claims arising under an individual insurance policy that has been converted from an earlier group policy subject to ERISA. Id. The court concluded that "claims arising under a converted individual policy are not 'related to' an ERISA plan for purposes of ERISA preemption." Id. at 875.

Defendant argues that this case is inapplicable because there is no allegation that plaintiff's policy contained a right to convert that policy into an individual policy. We are unconvinced.

To rule that plaintiff's policy was not converted because it was not

11

done pursuant to an express provision of the insurance policy would be to elevate form over substance.  Our conclusion is especially apt because the determination of whether a plan exists within the meaning of ERISA is "a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person." Deibler v. United Food & Commercial Workers' Local Union 23, 973 F.2d 206, 209 (3d Cir. 1992).   Based upon the facts of this case, a reasonable person would conclude that an ERISA plan did not exist in 2004 when defendants denied benefits.   Moreover, as explained above, ERISA's goals are not furthered by application of ERISA to this case. As set forth above, ERISA's goal is to protect employees and employers.  In the instant case, there is no employee or employer.  Rather, there is an insurer and an insured. ERISA is not meant to regulate insurers generally.   See 29 U.S.C. § 1144(b)(2).   To apply ERISA in the instant case would be to apply ERISA to regulate insurers.  Notably, it is an insurance company, not an employer or employee asserting this defense.[6]

---

[6] A case relied upon by the defendants from the United States District Court for the Southern District of Indiana is factually analogous to this case. See  Reber v. Provident Life & Accident Ins. Co., 93 F. Supp. 2d 995 (S.D. Ind. 2000). The employer in that case was defunct when a former employee attempted to bring state law causes of action against her insurer for discontinuance of disability benefits.   The court, nevertheless found that the ERISA applied.   In so doing, however, the court stated that  its finding "does not appear to advance some of the underlying objectives of ERISA." Id. at 1008.  It noted that it did advance the objective of cost containment.  Id. at n.9.  The court found that it was bound by the "statute itself."  Id.  We disagree, and will not construe the statue so narrowly as to apply in cases that would not serve its main objectives and would serve merely to regulate insurers.   Moreover, the facts of Reber while similar to the instant case are not identical.  For example in Reber, the plaintiff

12

Another similar case is New England Mutual Life Ins. Co., Inc. v. Baig, 166 F.3d 1 (1st Cir. 1999).  In Baig, the policy was not initially established by the employer and the insurance company.  Instead, the employee himself made the initial purchase directly.  The policy was an individual policy that covered only that employee.  Id. at 4.  "[T]he policy itself did not bear any relationship to Baig's employment, and would have continued in effect as long as Baig continued to pay the premiums, regardless of any changes in his employment situation.  Id. at 5.

Likewise, in the instant case, the policy as of 1991 bore no relationship whatsoever to plaintiff's employment and would continue, and does continue to this day, only because plaintiff herself continues paying the premiums as a non-discounted rate.

**Conclusion**

Thus, based upon the above law, we find that the plaintiff's state law causes of action are not preempted by ERISA.  Accordingly, the defendant's motion to dismiss will be denied.

---

became disabled and began receiving benefits under the insurance contract years before the business went defunct and her name continued for that time period to appear on billing statements sent to the employer. Id. at 1003.  In the instant case, the plaintiff did not begin to receive benefits until after Somerset had severed its ties with the insurance provider.

13

**IN THE UNITED STATES  DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GLORIA WEICHAND and** | : | No. 3:06cv435 |
| **RALPH WEICHAND, her husband,** | : | |
| Plaintiffs | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| **THE GUARDIAN LIFE** | : | |
| **INSURANCE COMPANY OF** | : | |
| **AMERICA and BERKSHIRE** | : | |
| **LIFE INSURANCE COMPANY** | : | |
| **OF AMERICA,** | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
:

## **ORDER**

**AND NOW**, to wit, this 31st day of July 2007, the defendants' motion to dismiss (Doc. 6), which we have converted to a motion for summary judgment on the issue of federal preemption is hereby **DENIED**.

                                          **BY THE COURT:**

                                          **s/ James M. Munley
                                          JUDGE JAMES M. MUNLEY
                                          United States District Court**